Curtis, Ch. J.
[After stating the facts.]—The reservations in these two charters [the Dongan and the Montgomery], prevent that portion of the shore subsequently known as the Battery passing to the-city. The language indicates the intention of the-crown, and has to be construed in view of the situation at that time, and the. reservations are sufficiently broad, to prevent the title to the fort, and its liberties,, boundaries, extents and privileges, passing from» the-crown to the city. As the city was then fortified from river to river near the line of Wall street, to protect it landward, and as the fort was constructed at the earliest settlement of the island, to protect it from foreign enemies approaching through the harbor, it cannot be presumed, that the crown intended to convey to the city, the land between high and low water mark lying immediately under its seaward walls.
It must be regarded, that whatever title the city had, or has had, to the lands in question, has been .derived from the State, as the successor to the crown.
■ The plaintiff is in the same position as the other-various owners of lots in the government-house block.. His deed and their deeds contain this covenant on the-part of the city, that the Battery and the Bowling green shall never be appropriated by the city to private uses.
The wrong complained of by the plaintiff, if any,, arises from some violation of this covenant in the deed of 1815 from the city, under which he claims, or of the restriction in the act of March 16, 1790, or some infractions of both. The provision in the act of 1790, is a matter between the State making a declaration and *472 enacting a restriction, and the city in which the Battery thereby became vested. The act of March 27, 1821 (Davies’ Laws, p. 645), purporting to convey Castle Garden to the city, contains substantially the same restriction. When the effect of this latter restriction was considered at the general term, in Phoenix v. The Commissioners of Emigration, 12 How. Pr. 5, this language was regarded as simply a dedication of the lands granted to the use, for the specified purposes, of the public at large, and it was deemed that no trust was created “for the benefit of individuals, such as private persons as cestuis que trust were competent to enforce.”
The declaration of the legislature, that the Battery should remain for the erection of public buildings, and such works of defense as the legislature shall direct, and shall not be appropriated for private uses, is not a contract, under which any rights or easements have passed to the plaintiff, more than to any other citizen, nor did such declaration create a trust for his benefit, to be enforced by his action individually as a cestui que trust. The only beneficiary was the public at large, and by it as such, through its proper officers, if it has sustained any wrong, redress is to be sought. x
The plaintiff to sustain his action, must rely on the covenant in the deed from the city to Edmund Smith, through whom he claims, and establish that the Battery has been appropriated by the city, in violation of such covenant, to private uses, and that he is in a position as plaintiff to maintain this action.
In the rapid transit act, it is enacted, “ that the use of all streets and public places by corporations building and using railroad tracks under any authority derived from that act, or for the purposes intended to be served by that act, is, and is to be regarded by all courts as a public use.” Without discussing the legal effect of this definition, it is certain that there are some settled *473 principles that indicate a difference between public uses and private uses. Improvements of a public character, are those in the use of which, and in the enjoyment of the advantages of which, the public at large may become sharers, or may become benefited. When such improvements are authorized by the State, the latter necessarily acts through its agents, and may act through corporate bodies or individuals. The construction and operation of a railroad or a canal is a public work, and though individuals may be pecuniarily benefited by them, or directly participate in the profits arising from their use, still their purposes and business remain a public use, and land appropriated for their use cannot be regarded as appropriated for private uses. The use by the public of an elevated railroad across the Battery, comes within the limits of what is known as a public use.
It is, however, claimed that this use was one not - known or contemplated, at the time of the execution of this deed from the city in 1815, and in addition to that, it is argued that unless the defendants can show legal authority for their use of the Battery, such use is that of trespassers, and is merely a private use. Doubtless at the time of the making of the covenant in this deed, such a public use as traversing the Battery with the modern structure, known as an elevated railroad, was not in contemplation, in the minds of the parties, but notwithstanding that, it is apparent that these lands have been reserved from the earlier period for public uses. They were appropriated at first to works of defense, and for such purposes reserved in the grants by charters from the crown to the city. They after-wards were reserved for public works generally, and there is no just reason for holding that their occupancy must be confined to precisely such public uses as were known at the time. If it had been intended to exclude such public uses and works as the exigencies *474 and developments of the future might call into existence for the public advantage and enjoyment, it should and would have been so expressed.
The evidence fails to show that the plaintiff, whose lot in Bridge street does not face the Battery, but is at a distance of some two hundred feet or more from it, actually suffers any injury from the acts of the defendants. His position is that of one of a class of owners of lots, in respect to which he claims that the defendants have violated the covenant of the city, to hold the Battery inviolate against being appropriated for private uses. If the defendants wantonly and without lawful license from the city, or those in that behalf representing the city, have entered upon the Battery, and appropriated it to a private use, the city or the plaintiff might be aggrieved, and rightfully entitled to redress, and to have such action restrained.
The proceedings under which the defendants are constructing their railroad are upon their face legal, and show that they are proceeding apparently under the authority of the law. The question is raised, that the privileges granted to the defendants under section 36 of the rapid transit act, are in conflict with the provisions of the constitution. It is just, that where a judicial determination is sought, as to the constitutionality of a provision of a statute, where the rights of the city and the rights of the public are involved, that the city and the public should be legally represented, and also be parties to the action. It does not appear that the plaintiff has sustained any damage, or that he probably will, from the acts of the 'defendants. His position in respect to such acts, is the same as that of a large class of other owners in the government-house block. The power of a court of equity, to arrest by injunction the progress of the work under construction by the defendants, and which causes no damage to the plaintiff, who sues as one of a *475 large class of owners, ought not inconsiderately to be exercised. Neither is there such a substantial departure from a line along the edge of the Battery, as in view of the preservation of trees and the public enjoyment sought to be thereby promoted, as calls for the restraint of an injunction.
If the injury complained of is the usurpation of a franchise, or the creation of a public nuisance, the public must protect itself through its own officers, and by invoking the proper remedies established by law. It is not for every private individual, or any one of a class of individuals, to litigate on behalf of the public, and thus to champion or perhaps complicate or defeat their rights. Public policy, and the necessity of protection from a multiplicity of litigations, justify the decisions of the courts sustaining this doctrine (Lansing v. Smith, 8 Cow. 156; Davis v. The Mayor, 14 N. Y. 526; Doolittle v. Supervisors, 18 Id. 163; Milhau v. Sharp, 27 Id. 626; Osborne v. Brooklyn City Railroad Co., 5 Blatch. 366).
But passing from this, it appears that when the proceedings under which the defendants justify their action came before the general term of the supreme court, it was objected, that the act was local and private, and therefore unconstitutional. These objections-were considered, in the opinion rendered by the court, and were overruled.
In a suit where the question is again presented between parties who have already had an opportunity to-be heard and where a carefully considered opinion has been delivered upon the question, and concurred in by the judges, at the general term, there is a propriety in giving weight to that decision in this suit for an injunction, especially where no material interests of the-plaintiff are affected by the acts sought to be enjoined, and where the public and the city, whose interests are mainly affected, are not before the court as parties.
*476 The acts of the legislature heretofore referred to, . confer upon the department of parks the power possessed by the city, with reference to granting a revocable license to use the Battery, for a public purpose, for a limited period of time. In the matter under consideration, their action is that of the city, whose agents for such pupose the legislature has made them.
The provisions of "the constitution, as now amended, are these, as contained in section 18 of article 3 :
“The legislature shall not pass a private or local bill granting to any corporation the right to lay down railroad tracks, or granting to any private corporation any exclusive privilege, immunity or franchise, but shall pass general laws providing for these cases.” And “no law shall authorize the construction or operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of that portion of the street or highway upon which it is proposed to construct or operate such railroad shall be obtained,” &c., or, in case such consent cannot be obtained, "the general term of the supreme court for the district in which it is proposed to be constructed may, upon application, appoint three commissioners, who shall determine, after hearing all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property-owners.”
Section 36 of the rapid transit act provides that the commissioners may fix and determine the route or routes by which any elevated steam railway or railways now in actual operation may connect with other steam railways, or the depots thereof, or with steam ferries ; upon fulfillment by such elevated steam railway, so far as it relates to such connection, of such of the requirements, &c., of section 4, as are required to *477 be fulfilled by section 18, article 3 of the constitution, thereupon such connecting elevated railway shall possess all the powers conferred by section 26 of the act, and when such connecting route shall be so designated such elevated railroad may construct such connection with like effect as though the same had been a part of the original route of such railway.
The defendants have not violated the constitutional requirement by proceeding without the consent of the adjacent owners, on the substituted permission of commissioners appointed by the court. That has been obtained. The question is raised as to whether this section 36 of the rapid transit act is not unconstitutional, in so far as the defendants claim a right under and in accordance with it to make a ferry and depot connection across the Battery. The acts of the defendants are not the construction of a new, projected railroad, such as- would be apparently in conflict, but the authorized exercise of a right in its nature incidental, and, in a sense, appurtenant to what they already held, subject to the public control, and for the public use and convenience, and which the public have by this limited license permitted them, at its volition, in a specified way, to exercise and enjoy.
This ferry and depot connection is not shown to be a violation of those rights secured to the public by the constitution, because of any abuse or evasion on the part of the defendants. It is simply the direction and adaptation of a franchise already given, and not the conferring of a new franchise by a private and local bill.
The legislature has authority in respect to the powers and privileges of this class of corporations, and whether there be one or more in operation or in existence, it may by a general law regulate, direct and define their priviléges.
The plaintiff has not established his claim to a judgment for the injunction sought by his action. The complaint should be dismissed upon the merits, with costs.